THOMAS L. PIMBLEY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Pimbley v. Commissioner
Docket No. 8938-76.
United States Tax Court
T.C. Memo 1982-103; 1982 Tax Ct. Memo LEXIS 647; 43 T.C.M. (CCH) 678; T.C.M. (RIA) 82103; February 25, 1982. *647 Petitioner failed to cooperate with respondent in preparing for trial and failed to appear when his case was called for trial. Held, respondent's Motion to Dismiss for Lack of Prosecution under Rule 123(b), Tax Court Rules of Practice and Procedure, is granted. Held further, addition to tax for fraud under sec. 6653(b), I.R.C. 1954, is sustained. Frank R. DeSantis, for the respondent. STERRETT
MEMORANDUM OPINION STERRETT, Judge: By notice of deficiency dated June 28, 1976 respondent determined deficiencies and additions to tax in petitioner's Federal income taxes as follows: Taxable year
Addition to tax under
ended Dec. 31,
Deficiency
sec. 6653(b)
sec. 6654(a)
1969
$ 3,998.65
$ 1,999.33
$ 127.96
1970
3,328.53
1,664.27
107.33
1971
2,389.26
1,194.63
76.45
1972
1,322.00
661.00
42.30
*648 This case is presently before the Court on respondent's Motion to Dismiss for Lack of Prosecution. Petitioner resided in Ontario, Canada at the time of filing his petition herein. He moved to Canada sometime in June 1974 after being indicted on various charges in the United States. Since, that time, and continuing until the call of this case for trial from the trial calendar on October 26, 1981, petitioner has not reentered the United States for fear of being arrested upon crossing the border. Neither has petitioner ever been represented by counsel in this matter. The petition was timely filed on September 27, 1976 and respondent's answer thereto was filed on November 29, 1976. Pursuant to the requirements of Rule 37, Tax Court Rules of Practice and Procedure, [1] petitioner filed a reply to respondent's answer in which he denied the bases for the deficiency and the determinations of fraud. On September 1, 1977 respondent sent a proposed stipulation of facts to petitioner's address in Canada. The petitioner did not execute or return *649 the stipulation. One day before the original September 27, 1977 trial date in this case, petitioner filed a motion for continuance on the grounds that he did not have an attorney, that respondent had not yet answered his interrogatories, and that he was unable to secure the return of two boxes of financial records which had been obtained from him in a prior state prosecution and which purportedly had been turned over to respondent. This Court granted petitioner's motion and set the case for trial in Buffalo, New York on June 12, 1978. During the ensuing months, telephonic and mail communications took place between the representatives of respondent located in the United States, and petitioner, located in Canada. Respondent offered to have a representative travel to Canada for a formal pre-trial conference, but the terms of such offer were rejected by petitioner. No progress was made toward a stipulation. Respondent represented that since May 10, 1978 he had made numerous unsuccessful attempts to contact petitioner by telephone. As it appeared that petitioner would not show up at the trial or send a representative, respondent moved on June 12, 1978 to change the place of trial *650 to Cleveland, Ohio in order to accommodate witnesses that were to be called in support of respondent's showing of fraud. The Court granted respondent's motion. The case was placed on the May 7, 1979 Cleveland trial calendar of this Court. Pursuant to petitioner's informal request, on February 15, 1979 the Court continued the case and subsequently set the trial for October 15, 1979. On August 22, 1979 respondent sent to petitioner another proposed stipulation of facts. Petitioner did not communicate with respondent with respect to the proposed stipulation and failed to execute or return the document. When petitioner did not appear at the October 15, 1979 call of the calendar, respondent orally moved to continue the case to give petitioner time to work out his legal problems in Canada. The motion was granted. On June 12, 1980 respondent served petitioner with a request for admissions. No response was received. The case again was set for trial on February 2, 1981. Just before that date, petitioner wrote to this Court from a Canadian jail and requested a further continuance. We again granted his request but announced that the case would be set for definite trial on the next *651 calendar at Cleveland, to be held on October 26, 1981. On that date, neither petitioner nor any representative for him appeared in Court. Respondent filed the Motion to Dismiss for Lack of Prosecution that is here in issue. Therein he alleged that he served on petitioner a written request for admissions on June 12, 1980 and sent petitioner a letter on September 25, 1981 inviting petitioner to meet on October 6, 1981 for a stipulation conference. On October 6, 1981 petitioner informed respondent by telephone that he did not intend to respond to the request for admissions and further that he could not attend the meeting or appear at the call of the calendar later that month unless respondent was willing to "grant him amnesty" from arrest during his presence in the United States. We can no longer put off for the future what judicial prudence requires to be done today. This case has been set for trial six times since September 1977. On five of those occasions, we continued the case to give petitioner time to work out other legal problems, obtain counsel, and prepare for trial in this case. Our patience is not boundless. At no time has petitioner met with respondent to stipulate *652 to relevant facts pursuant to Rule 91(a), replied to respondent's proposed stipulations of fact or request for admissions, or exhibited good faith in his dealings with respondent. Certainly he has not exhibited to this Court any good reason why this case should not be brought to a conclusion. In February 1981 we warned petitioner, on the record, that the trial would definitely take place in October. He neither appeared personally at trial nor sent a representative. His letter dated October 16, 1981 to the Court merely stated that he was not prepared to attend Court on October 26 and that he desired a trial sometime in 1982. Accordingly, we find that respondent's Motion to Dismiss for Lack of Prosecution should be granted under Rule 123(b). See generally Freedson v. Commissioner,67 T.C. 931, 938 (1977), affd. 565 F.2d 954 (5th Cir. 1978) (motion under Rule 123(b) granted where taxpayer used a variety of stalling tactics, sought and was granted two trial continuances over a period of 3 years, and appeared unprepared for trial). It follows that, petitioner having the burden, he is liable for the deficiency in tax as determined by the respondent *653 as well as for the addition to tax pursuant to section 6654(a) as determined by respondent for the years at issue. With respect to the addition to tax under section 6653(b), we must determine whether any part of petitioner's underpayment of tax for the years in issue was due to fraud with intent to evade tax. The existence of fraud is a question of fact to be determined upon consideration of the entire record. Stratton v. Commissioner,54 T.C. 255, 284 (1970). Respondent has the burden of proving fraud for each taxable year in issue by clear and convincing evidence. Sec. 7454(a); Rule 142(b); Otsuki v. Commissioner,53 T.C. 96, 105 (1969). In the recent case of Doncaster v. Commissioner,77 T.C. 334, 337 (1981), we held that where petitioner failed to file a reply to respondent's answer, and respondent filed a "Rule 37(c) motion" (motion for an order that allegations in an answer, to which no objection is filed, should be deemed admitted), the deemed admissions were sufficient to satisfy respondent's burden of proof on the fraud issue. *654 In Doncaster and other cases, this Court has consistently held that, in attempting to carry his burden, respondent may rely on facts that are deemed admitted under the rules of this Court. See Marcus v. Commissioner,70 T.C. 562, 577-578 (1978), affd. in an unpublished opinion 621 F.2d 439 (5th Cir. 1980); Freedson v. Commissioner,65 T.C. 333, 335 (1975), affd. 565 F.2d 954 (5th Cir. 1978). Here respondent relies entirely on the facts and evidence that were deemed admitted under Rule 90(c), [2] when petitioner failed to reply to respondent's Request for Admissions, mailed June 12, 1980. These admissions form the basis for our findings herein. [3]
*655 During the taxable years 1969 to 1972, petitioner was a public accountant practicing as a sole proprietor. He filed returns for 1969 and 1970 on September 28, 1971 on which he reported no taxable income and no tax liability for either year. Petitioner failed to file any returns for 1971 and 1972. Using the net worth method of reconstructing taxable income, see Holland v. United States,348 U.S. 121, 129 (1954), respondent compared petitioner's total assets at the end of each taxable year with his total assets at the end of each previous taxable year. At the end of 1968 petitioner had a net worth of $ 24,954.03. By examining bank accounts owned and maintained by petitioner, [4] automobiles owned by petitioner, and real estate transactions engaged in by petitioner in the name of Warren-Miles Corporation, [5] respondent determined that petitioner owned assets with an aggregate cost basis to him on December 31 of each of the years 1968 to 1971 in the amount of $ 110,324.30, $ 133,659.98, $ 135,051.66, and $ 150,186.02, respectively. From these amounts respondent subtracted petitioner's liabilities, including personal loans, automobile loans, mortgages, land contract *656 obligations, and Master Charge balances.In addition, respondent made adjustments for the accumulated reserve for depreciation on petitioner's depreciable business assets. Respondent determined that petitioner's net worth at the end of each of the years 1968 to 1972 and the increase in the net worth of petitioner during each year was as follows: Net worth
Increase in
Year
at Dec. 31,
net worth during year
1968
$ 24,954.03
1969
31,314.88
$ 6,360.85
1970
36,918.39
5,603.51
1971
41,258.84
4,340.45
1972
44,957.01
3,698.17
Petitioner's income is reflected by increases in net worth, *657 plus amounts determined to represent non-deductible expenditures for personal living expenses, less the excludable portion of long-term capital gain realized on the sale of real property in 1972. [6] As such, petitioner's correct taxable income, taxable income stated on his returns, and his understatement of taxable income for 1969 through 1972 were as follows: 1969
1970
1971
1972
Increase in Net
Worth During Year
$ 6,360.85
$ 5,603.51
$ 4,340.45
$ 3,698.17
Add: Personal Living
Expenses
8,116.54
7,684.85
6,615.92
8,116.52
Total
$ 14,477.39
$ 13,288.36
$ 10,956.37
$ 11,814.69
Less: Sec.1202
Deduction
6,003.50
Total Adjusted Gross
Income, As Corrected
$ 14,477.39
$ 13,288.36
$ 10,956.37
$ 5,811.19
Less: Adjusted Gross
Income Per
NO RETURN
NO RETURN
Return
NONE
NONE
FILED
FILED
Understatement of
Adjusted Gross
Income
$ 14,477.39
$ 13,288.36
$ 10,956.37
$ 5,811.19
Less: Standard
Deduction
1,000.00
1,000.00
1,424.33
*
Less: Personal
Exemption
600.00
625.00
675.00
*
Correct Taxable
Income
$ 12,877.39
$ 11,663.36
$ 8,857.04
$ 5,811.19
Taxable Income
NO RETURN
NO RETURN
Reported on Return
NONE
NONE
FILED
FILED
Understatement of
Taxable Income
$ 12,877.39
$ 11,663.36
$ 8,857.04
$ 5,811.19
*658 Accordingly, petitioner's correct tax liability, tax liability reported on his return, and the understatement of tax liability for each year in issue are as follows: 1969
1970
1971
1972
Correct income tax
liability
$ 3,998.65
$ 3,328.53
$ 2,389.26
$ 1,322.00
Tax liability
reported on
NO RETURN
NO RETURN
return
NONE
NONE
FILED
FILED
Understatement
of tax liability
$ 3,998.65
$ 3,328.53
$ 2,389.26
$ 1,322.00
Direct evidence of fraud is seldom available. Accordingly, circumstantial evidence and inferences of a taxpayer's intent to evade tax are proper bases on which fraud may be found. Stoltzfus v. United States,398 F.2d 1002, 1005 (3d Cir. 1968), cert. denied 393 U.S. 1020 (1969). At the outset, we note that petitioner was a public accountant. As such, he was aware of his duty to file annual income tax returns and to report all of his income on such returns. The facts establish that petitioner filed late returns for 1969 *659 and 1970 on which he reported no taxable income and filed no returns for 1971 and 1972. It is well established that the persistent practice of omitting substantial amounts of income constitutes fraud. Cefalu v. Commissioner,276 F.2d 122, 129 (5th Cir. 1960), affg. a Memorandum Opinion of this Court; Marcus v. Commissioner,70 T.C. at 577. Further, willful failure to file returns, when viewed along with other evidence, may properly be considered to establish the requisite intent to evade tax. Cirillo v. Commissioner,314 F.2d 478, 482 (3d Cir. 1963), affg. on this issue a Memorandum Opinion of this Court; Powell v. Granquist,252 F.2d 56, 60 (9th Cir. 1958). Here, petitioner understated his income for 2 years and filed no returns for 2 others. By virtue of his professional experience as an accountant, petitioner obviously was aware of his obligation to file accurate and complete returns. Moreover, considering the amounts of income reported compared with the total amounts determined by respondent, we are convinced *660 that petitioner's omissions of income and his failure to file returns were not merely inadvertent or negligent. In this respect, we note that petitioner neither appeared at trial nor offered any explanation at any other time for his actions (or inactions). Under these circumstances, we conclude that petitioner's willful failure to file and willful omission of substantial amounts of income constitute evidence of fraudulent intent to evade tax. Accordingly, petitioner is liable for the additions to tax imposed under section 6653(b) for all the years at issue. [7] To reflect the foregoing, An *661 appropriate order and decision will be entered.
Footnotes
1. Unless otherwise indicated, any reference to "Rules" shall be deemed to refer to the Tax Court Rules of Practice and Procedure.↩
2. Rule 90(c) provides in pertinent part as follows: RULE 90. REQUESTS FOR ADMISSIONS (c) Response to Request. Each matter is deemed admitted unless within 30 days after service of the request or within such shorter or longer time as the Court may allow, the party to whom the request is directed serves upon the requesting party (i) a written answer specifically admitting or denying the matter involved in whole or in part, or asserting that it cannot be truthfully admitted or denied and setting forth in detail the reasons why this is so, or (ii) an objection, stating in detail the reasons therefor. The response shall be signed by the party or his counsel, and the original thereof, with proof of service on the other party, shall be filed with the Court. A denial shall fairly meet the substance of the requested admission; and, when good faith requires that a party qualify his answer or deny only a part of a matter, he shall specify so much of it as is true and deny or qualify the remainder. An answering party may not give lack of information or knowledge as a reason for failure to admit or deny unless he states that he has made reasonable inquiry and that the information known or readily obtainable by him is insufficient to enable him to admit or deny. A party who considers that a matter, of which an admission has been requested, presents a genuine issue for trial may not, on that ground alone, object to the request; he may, subject to the provisions of paragraph (f) of this Rule, deny the matter or set forth reasons why he cannot admit or deny it. An objection on the ground of relevance may be noted by any party but is not to be regarded as just cause for refusal to admit or deny. ↩
3. The facts set out in respondent's Request for Admissions, paragraphs 1 to 48, 50 to 52, are incorporated herein by this reference.↩
4. During the years in issue, petitioner owned and maintained bank accounts in various banks in his own name and in the names of West Shore Family Planning, Inc., West Shore Personnel, Inc., the Warren-Miles Corporation, East Shore Center, and West Shore Center. ↩
5. Although Warren-Miles Corporation filed articles of incorporation with the State of Ohio in 1967, it paid no state franchise tax for 1969 through 1972. No Federal corporate income tax return was filed by Warren-Miles Corporation for any year, and no books and records were maintained by such corporation.↩
6. Respondent's net worth computations were set forth in his Request for Admissions and have been deemed admitted pursuant to Rule 90(c)↩.
*. Taxable income determined for single taxpayer with one exemption for 1972.↩
7. Because we have made an affirmative finding of fraud based on deemed admissions, we need not decide whether the addition to tax for fraud may be imposed without any affirmative proof in a decision based on dismissal under Rule 123(b). See Gordon v. Commissioner,73 T.C. 736, 743 (1980) (Court finds that it may enter a default decision under Rule 123(a), including the fraud addition, despite lack of affirmative proof of fraud, but leaves open the question whether fraud may be found without any affirmative proof if decision is based on dismissal under Rule 123(b)↩).